# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All funds on deposit, up to $500,000.00, in Bank of America, N.A. acct. # 237052707001, in the name of Chaudhry Ahmed | Case No. 1:24MJ335-1 |

### APPLICATION FOR A WARRANT
### TO SEIZE PROPERTY SUBJECT TO FORFEITURE
### BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the __Middle__ District of __North Carolina__ is subject to forfeiture to the United States of America under __18__ U.S.C. § __981(a)(1)(C) & 982(a)(7)__ *(describe the property)*:

All funds on deposit, up to $500,000.00, in Bank of America, N.A. account number 237052707001, in the name of Chaudhry Ahmed

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

In accordance with Rule 4.1(b)(2)(A), the Applicant appeared before me by telephone, was placed under oath, and attested to the contents of this Application, which was submitted to me by reliable electronic means.

/s/ David Yu
*Applicant's signature*

David Yu, Special Agent, FBI
*Printed name and title*

Date: 8/29/2024 4:16 pm

*Judge's signature*

City and state: Durham, North Carolina

Hon. Joe L. Webster, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEIZURE WARRANTS

I, David Yu, Special Agent with the Federal Bureau of Investigation ("FBI") state under penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the following is true and correct:

### Introduction and Agent Background

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since January 1999. I am currently assigned to a criminal investigations squad of the Charlotte Division where my duties include the investigation of matters involving health care fraud.

2. This Affidavit is made in support of applications for seizure warrants for the property described below:

Financial accounts:

    a. All funds on deposit, up to $250,000, in Bank of America, N.A. account number 237050585092 (BOA 5092) in the names of Chaudhry and Michelle R. Ahmed;

    b. All funds on deposit, up to $500,000, in Bank of America, N.A. account number 237052707001 (BOA 7001) in the name of Chaudhry Ahmed; and

    c. All funds on deposit, up to $1,913,892, in Bank of America, N.A. account number 237052325409 (BOA 5409) in the name of Dune Medical Supply LLC.

Based on the investigation described in this Affidavit, there is probable cause to believe that these properties constitute or are derived from proceeds traceable to specified unlawful activity, specifically Title 18, United States Code, Sections 1347 (health care fraud) and are therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7).

3. This investigation concerns at least two suppliers of durable medical equipment ("DME")—Dune Medical Supply LLC and Prospect Health Solutions, Inc.—and their owner Chaudhry Ahmed. As will be shown below, there is probable cause to believe that Dune Medical Supply LLC and Prospect Health Solutions, Inc. fraudulently billed Medicare for DME that was not medically necessary, not actually ordered by an appropriate medical provider, and not actually provided. Collectively, the companies billed Medicare over $100 million over the span of less than five months, and Medicare paid the companies over $27 million.

4. The facts and information contained in this Affidavit are based on my personal knowledge, as well as information obtained from witness interviews, documents, law enforcement records, and information provided by other law enforcement officials, as well as other investigators and people involved in this investigation.

5. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of warrants, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the requisite foundation for a probable cause finding to support the issuance of the requested warrants.

## Statutory Authority

6. This investigation concerns alleged violations of Title 18, United States Code, Section 1347, health care fraud, and Title 18, United States Code, Section 1343, wire fraud.

    a. Title 18, United States Code, Section 1347 prohibits (a) knowingly and willfully executing, or attempting to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned

by, or under the custody or control of, any health care benefit program. A violation of Section 1347 is a "Federal health care offense" pursuant to Title 18, United States Code, Section 24(a).

  b. Title 18, United States Code, Section 24(b) defines a "health care benefit program" as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." Insurance companies that provide payment and reimbursement for medical services qualify as a health care benefit program. Medicare is a health care benefit program.

### Background on Medicare and DME

7. Medicare is subdivided into multiple program "parts." Medicare Part A covers health care services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covers physician services and outpatient care, including an individual's access to DME.

8. DME is equipment designed for repeated use and for a medical purpose, such as orthotic devices (including back, arm, and knee braces), wheelchairs, prosthetic limbs, collagen dressing, gauze, and hydrocolloid dressing.

9. Medicare reimburses DME companies for items and services rendered to beneficiaries. To receive payment from Medicare, providers must submit or cause the submission of claims to Medicare.

10. A Medicare claim for DME reimbursement is required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique provider identification number of the provider who prescribed or ordered the equipment.

11. Medicare reimburses claims for DME only if the DME was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by an appropriate medical provider, and actually provided to the beneficiary as billed.

## The Relevant Parties

12. Dune Medical Supply, LLC ("Dune") is a North Carolina corporation located at 2310 North Centennial Street, Suite 102 High Point, NC 27265, that purportedly provides DME to Medicare beneficiaries. Investigative agents have conducted surveillance at this physical location.

13. Prospect Health Solutions, Inc ("Prospect") is a Florida corporation located at 5460 North State Road 7, Fort Lauderdale, FL 33319, that purportedly provides DME to Medicare beneficiaries.

14. Chaudhry Ahmed was a resident of Guilford County and is the owner and registered agent of Dune and the owner and registered agent of Prospect. According to Medicare enrollment documents, Ahmed is listed as the owner of both Dune and Prospect.

15. Ahmed's most recent address according to law enforcement databases is 225 Crestwood Circle, High Point, NC 27260. Ahmed's driver's license lists this same address.

## The Scheme

16. From on or about April 27, 2024, through present, Medicare received complaints from hundreds of beneficiaries or providers claiming that Dune was fraudulently billing Medicare for DME that the beneficiaries never received, requested, needed or the provider never ordered. To date, over 350 complaints have been received related to Dune.

17. From on or about June 1, 2024, through present, Medicare received complaints from hundreds of beneficiaries or providers alleging that Prospect was fraudulently billing Medicare for DME that the beneficiaries never received, requested, needed or the provider never ordered. To date, over 300 complaints have been received related to Prospect.

## Claims Analysis: Dune

18. A review of Medicare claims data revealed that Dune began submitting claims to Medicare around April 2024. Then from around April 2024 through around August 19, 2024, Dune submitted more than 36,000 claims for over 20,000 Medicare beneficiaries, resulting in claims reimbursement requests of over $56.3 million.

19. To date, data analysis showed that Medicare has approved disbursement of more than $15.4 million to Dune.

20. Of the total claims Dune submitted to Medicare, more than $54.1 million was billed to Medicare in the 60-day period ending August 19, 2024, which represented an increase of over 2,400% when compared to the previous 60 days. Based on my training and experience I know that a significant increase in claim submission over a short period of time, as reflected in Dune's billings to Medicare is indicative of fraud.

21. Furthermore, analysis of claims data showed that for approximately 67% of the claims Dune submitted, the beneficiary that allegedly received DME had no prior relationship

with the provider that allegedly ordered the DME. This is significant because, as explained, a DME order must be prescribed by an appropriate licensed medical provider based on the beneficiary's underlying condition. If a medical provider has no prior relationship with the beneficiary, the medical provider could not know whether the DME equipment was medically necessary. Based on my training and experience I know that a high percentage of claims in which there is no prior relationship between the ordering provider and the beneficiary, as reflected in Dune's billings to Medicare, is indicative of fraud.

22. Claims data also showed that for approximately 75% of the beneficiaries on whose behalf Dune billed Medicare were identified in a separate investigation indicating that their identities were compromised and used unlawfully by individuals to obtain fraudulent reimbursements from Medicare. Based on my training and experience, compromised Medicare beneficiary information is shared or exchanged between fraudsters and is often used in subsequent fraudulent claim schemes.

23. Dune also submitted claims to Medicare for more than 115 beneficiaries who were deceased prior to the date of service listed on the claim. Several of those beneficiaries died more than three years before the date of service listed on the claim reimbursement.

### Claims Analysis: Prospect

24. A review of Medicare claims data revealed that Prospect began submitting claims to Medicare around May 2024. Then from around May 2024 through around August 19, 2024, Prospect submitted more than 28,000 claims for over 17,000 Medicare beneficiaries, resulting in claims reimbursement requests of over $45.6 million.

25. To date, data analysis showed that Medicare has approved disbursement of more than $11.6 million to Prospect.

26. Of the total claims Prospect submitted to Medicare, more than $45.1 million was billed to Medicare in period ending August 19, 2024, which represented an increase of over 8,600% when compared to the previous 60 days.

27. Furthermore, analysis of claims data showed that for approximately 70% of the claims Prospect submitted, the beneficiary that allegedly received DME had no prior relationship with the provider that allegedly ordered the DME. The significance of this is explained in paragraph 21.

28. Claims data also showed that for approximately 77% of the beneficiaries on whose behalf Prospect billed Medicare were identified in a separate investigation indicating that their identities were compromised and used unlawfully by individuals to obtain fraudulent reimbursements from Medicare.

29. Prospect also submitted claims to Medicare for more than 50 beneficiaries who were deceased prior to the date of service listed on the claim. Several of those beneficiaries died more than three years before the date of service listed on the claim reimbursement.

30. According to data analysis, approximately 24 Medicare beneficiaries from Greensboro, North Carolina received DME from Prospect.

### Interviews of Beneficiaries

31. Investigators interviewed numerous beneficiaries who submitted complaints to Medicare. For example, between in or around July 2024, Dune submitted claims totaling approximately $1,963 to Medicare for a DME Back Brace (HCPCS L0637) purportedly provided to beneficiary, D.U.

32. Law enforcement officers interviewed K.G., daughter of Medicare beneficiary D.U. K.G. advised her mother, who resides in an assisted living facility, received a box containing a

back brace. The box also contained documents which referenced Medicare would pay for it. D.U. informed K.G. that she did not order the brace. K.G. noted D.U. has suffered chronic back pain for a long time but doesn't do anything to treat it other than aspirin. K.G. provided photos of the brace, packaging, and documentation.

33. Similarly, around August 2024, Dune submitted claims totaling approximately $1,715 to Medicare for a DME Back Brace (HCPCS L0651) purportedly provided to beneficiary, K.D.

34. Law enforcement officers interviewed K.D. who confirmed she previously submitted a complaint regarding Dune Medical Supply. According to K.D., she received a box with no return label which contained a back brace. K.D. was not aware she was going to receive this brace because she does not have any problems with her back. She didn't order the brace and believes her doctor would have called her if he had ordered it for her. K.D. attempted to contact Dune on two occasions. She left messages which were not returned.

35. Claims data revealed between in or around July 2024, Dune submitted claims totaling approximately $4,397 to Medicare for various back and leg braces (HCPCS L0651, L2397, L1852, L2397, L1852) for Medicare beneficiary, T.P.

36. Law enforcement officers interviewed T.P. T.P. stated that he received a package that contained an invoice and several back and leg braces that he had not requested. T.P. stated that he contacted his physician regarding these braces and his doctor's nurse confirmed there had been no order for these braces from their office. T.P. stated that he called a company about returning the braces, and he was told that they had a piece of paper with his doctor's signature on it. The employee at this company told T.P. not to worry, the braces had already been paid for and there would be no expense to him. T.P. stated that there were two companies involved in the

shipment of the braces and the company in High Point was not the same as the company listed on the package.

37. Medicare claims data also revealed on or around June 2024, beneficiary, S.L., received a back brace and various knee braces totaling approximately $4,397 (HCPCS L0651, L2397, L1852).

38. Law enforcement officers interviewed the alleged prescribing physician, Dr. S.P. S.P. confirmed she was informed by patient, S.L., they had received a back brace and knee braces. Dr. S.P. advised she did not order the braces and the patient does not have any medical problems which would necessitate a back or knee braces. Dr. S.P. does not recall receiving any phone calls or faxes asking her to sign an order for these items. Dr. S.P. noted she does not generally order braces as part of her practice.

39. Several Medicare beneficiaries for whom Prospect submitted DME claims reported in complaints to Medicare that the fraudulent DME packages they received showed that the package was shipped from Greensboro, North Carolina.

## Analysis of Activity in Bank Accounts

40. Investigators have obtained and reviewed information related to bank accounts in the name of Dune, Prospect, and Ahmed. Only those accounts significant to this Affidavit are discussed below.

### *Truist Account 0067*

41. Truist Bank account number 1340024270067 (Truist 0067) is a Simple Business Checking account in the name of Dune Medical Supply LLC. Bank records show that Ahmed has access to this account.

42. Medicare records show that Dune directed its claim reimbursements to Truist 0067, and that Medicare electronically deposits claim reimbursements to this account.

43. Records for Truist 0067 show that between May 7, 2024, and July 30, 2024, Medicare deposited approximately $3,817,970 of claims reimbursement for DME into Truist 0067. Medicare reimbursements account for more than 95% of the deposits and other credits to Truist 0067.

44. Since July 30, 2024, Medicare records show that more than $9.8 million in additional reimbursements have been sent to Truist 0067.

45. During this period there were numerous wires from this account. One wire transfer was for approximately $45,000 to Faisal Khan LLC. An open-source search indicates that this company is a "boutique financial services consulting firm" specializing in cross border money transfers.

46. The ending balance in Trust 0067 as of August 22, 2024, was approximately $4.5 million.

47. On August 23, 2024, investigators obtained and served a seizure warrant issued by Magistrate Judge Joe L. Webster for all funds on deposit, up to $13.6 million, in Truist 0067. (1:24MJ322-1). Preliminary indications from Truist are that approximately $6 million will be seized from this account.

### *JPMorgan Chase Bank Account 5016*

48. JPMorgan Chase Bank account number 925915016 (Chase 5016) is a Simple Business Checking account in the name of Prospect Health Solutions Inc. Bank records show that Ahmed has access to this account.

49. Medicare records show that Prospect Health Solutions directed its claim reimbursements to Chase 5016, and that Medicare electronically deposits claim reimbursements to this account.

50. Between June 4, 2024, and August 21, 2024, Medicare deposited approximately $8.9 million of claims reimbursement for DME into Chase 5016. Medicare reimbursements account for more than 98% of the deposits and other credits to Chase 5016.

51. The balance in Chase 5016 as of August 22, 2024, was approximately $2.1 million.

52. On August 23, 2024, investigators obtained and served a seizure warrant issued by Magistrate Judge Joe L. Webster for all funds on deposit, up to $8.9 million, in Chase 5016. (1:24MJ321-1). Preliminary indications from Chase are that approximately $4.1 million will be seized from this account.

### *Bank of America Account 3805*

53. Bank of America, N.A. Account Number 237049893805 (BOA 3805) is an account in the name of Chaudhry Ahmed.

54. Investigation to date identified approximately 30 wire transfers out of the Prospect Chase account 5016 since June 2024, including $450,000 and $300,000 wired on August 21 and August 20, 2024, respectively, to BOA 3805.

55. On August 23, 2024, investigators obtained and served a seizure warrant issued by Magistrate Judge Joe L. Webster for all funds on deposit, up to $750,000, in BOA 3805. (1:24MJ320-1). Preliminary indications from BOA are that approximately $537,000 will be seized from this account.

56. Since applying for the seizure warrant referenced in the preceding paragraph, investigators have reviewed bank records showing three additional wire transfers from Chase 5016 into BOA 3805 totaling $750,000. These wire transfers occurred on August 15, 2024 ($250,000), August 19, 2024 ($150,000) and August 22, 2024 (350,000).

### Bank of America Account 5092

57. Bank of America, N.A. Account Number 237050585092 (BOA 5092) is an account in the names of Chaudhry and Michelle R. Ahmed.

58. Investigation to date has determined that on August 15, 2024 BOA 5092 had a balance of zero dollars in the account. On August 22, 2024, a transfer was made from BOA 3805 into BOA 5092 in the amount of $250,000.

59. The balance in BOA 5092 as of August 26, 2024, was approximately $249,917, comprised solely of funds transferred from BOA 3805 on August 22, 2024.

### Bank of America Account 7001

60. Bank of America, N.A. Account Number 237052707001 (BOA 7001) is an account in the name of, and under the control of Chaudhry Ahmed, and was opened on August 19, 2024.

61. Investigation has determined that only two deposits have been made to this account.

62. On August 20, 2024, $250,000 was transferred from BOA 3805 to BOA 7001.

63. On August 23, 2024, $250,000 was transferred from Truist 0067 to BOA 7001.

64. The balance in BOA 7001 as of August 26, 2024, was approximately $500,000.

### Pinnacle Bank Account 4775

65. Pinnacle Bank account number 800109474775 (Pinnacle 4775) is a checking account in the name of Prospect Health Solutions Inc. opened on or about July 24, 2024. The investigation identified that Ahmed is signatory on this account.

66. Bank records for Chase 5016 show that between July 29, 2024, and August 14, 2024, $1,363,000 was transferred from Chase 5016 into Pinnacle 4775.

67. The balance in Pinnacle 4775 as of August 26, 2024, was approximately $0.00.

### Bank of America Account 5409

68. Bank of America account number 237052325409 (BOA 5409) is a Business Advantage Fundamentals Checking account in the name of Dune Medical Supply LLC opened on or about June 18, 2024. Bank records show that Ahmed is signatory on this account.

69. Records for BOA 5409 and Truist 0067 indicate that between July 1, 2024, and August 8, 2024, $1,061,000 was transferred into BOA 5409 from Truist 0067.

70. Records for BOA 5409 also indicate that on August 14, 2024, $852,892 was transferred into BOA 5409 from Pinnacle 4775.

71. The balance in BOA 5409 as of August 26, 2024, was approximately $892,000.

### Forfeiture Provisions

72. I am advised that Title 18, United States Code, Section 984 allows the United States to seize for civil forfeiture identical property found in the same place where the "guilty" property had been kept. I am further advised that the "fungibility" rule of Section 984(b) cannot reach back in time for an unlimited period. Section 984(b) provides:

> No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than one year from the date of the offense.

Because the conduct and financial activity under investigation occurred within the last four to five months, this Affidavit need not demonstrate that the funds now on deposit in the accounts described

above are the particular monies involved in the offense, so long as the forfeiture is sought for other funds on deposit in that same account.

73. I understand that property subject to civil forfeiture may be seized pursuant to 18 U.S.C. § 981(b), and property subject to criminal forfeiture may be seized pursuant to 21 U.S.C. § 853(f). In cases where the Government is not certain at the time of the seizure if it will pursue civil or criminal forfeiture, courts may issue the seizure warrant under both statutes. The probable cause showing is the same for Sections 981(b) and 853(f), except that the latter also requires a showing that a restraining order "may not be sufficient to assure the availability of the property for forfeiture."

74. An order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture because there is reason to believe that the property is in the custody of the defendant, who cannot reasonably be relied on to abide by an order to maintain the property in substantially the same condition as it is at the present time in order that it will be available for forfeiture. Furthermore, based on my training and experience I know that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. In contrast, where electronic funds are concerned, a seizure warrant guarantees that the funds will be in the Government's custody once the warrant is served.

75. I expect that some or all of the property subject to seizure may be found outside the Middle District of North Carolina. Section 981(b)(3) of Title 18, United States Code, explicitly

provides jurisdiction for the issuance of seizure warrants for property located in other districts. This statute provides as follows:

> Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found.

Issuance of the seizure warrant in this district is appropriate under the above statute, as this is the district "in which ... the acts or omissions giving rise to the forfeiture occurred," 28 U.S.C. § 1355(b)(1)(A). As provided in 18 U.S.C. § 981(b)(3), the warrant may be "executed in any district in which the property is found."

## Conclusion

76. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the properties described in paragraph 2 above constitute or are derived from proceeds traceable to the commission of a Federal health care offense or other "specified unlawful activity" (as defined in Title 18, United States Code, Section 1956(c)(7) (including violations of Title 18, United States Code, Sections 1347 and 1343)), and are therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C) and 982(a)(7).

77. Based on the foregoing I respectfully request that this Court issue seizure warrants for the properties described in paragraph 2 above.

This the 29th day of August, 2024.

/s/ David Yu
David Yu
Special Agent
Federal Bureau of Investigation

In accordance with Rule 4.1(b)(2)(A), the Applicant appeared before me by telephone, was placed under oath, and attested to the contents of this Application, which was submitted to me by reliable electronic means.

This 29th day of August, 2024. 4:16 pm

_____
Honorable Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina